UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED
98 APR 29 PM 4:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| CAJUN FOODS, INC., et al., | ] | |
| Plaintiff(s), | ] | |
| vs. | ] | CV 97-N-1287-NE |
| STATE FARM FIRE & CASUALTY INSURANCE COMPANY, INC. | ] ] ] | ENTERED APR 29 1998 |
| Defendant(s). | ] | |

### Memorandum of Opinion

In this action for indemnity, plaintiffs Cajun Foods, Inc. and its owners, Perry W. Perkins and Randall A. Perkins, (collectively "Cajun Foods"), sued State Farm Fire & Casualty Company ("State Farm")[1] in the Circuit Court of Colbert County, Alabama. *Complaint* at ¶¶ 1, 4. Cajun Foods, a defendant in another action in Colbert County, styled *Byram v. Cajun Foods, Inc.*, CV 96-478 (the "underlying action"), complains that State Farm failed to provide it a defense to and indemnification for its losses in the underlying action as allegedly required by a contract of insurance between it and State Farm. *Id.* at ¶¶ 7-8. In this lawsuit, Cajun Foods seeks the following: (1) declaratory judgment on its coverage under the alleged contract of insurance; *Id.* at Prayer for Relief, ¶¶ 1-2; (2) damages for State Farm's alleged breach of contract, including Cajun Foods' expenses incurred in

---

[1] The complaint names as defendants both State Farm Fire & Casualty Company, Inc., and a fictitious defendant, "'A' being the entity known as State Farm Insurance Company which issued a policy of insurance to Cajun Foods, Inc., bearing policy #93-BA-3002-1 and whose correct name to the plaintiff is unknown but will be added by amendment when ascertained." However, Cajun Foods has not amended its complaint, and therefore, State Farm remains the only defendant in this action.

defending itself in the underlying action; *Id.* at 8, 9; and (3) damages for State Farm's alleged bad faith failure to pay Cajun Foods' insurance claim, including damages for mental anguish and emotional distress allegedly suffered by the individual owners of Cajun Foods, Inc. *Id.* at ¶ 9.

State Farm timely removed this action to this court based upon diversity of citizenship of the parties, and on February 13, 1998, State Farm moved for summary judgment on all the claims against it. The motion is fully briefed and, on April 29, 1998, the parties argued the motion at the courts regularly scheduled motion docket. Accordingly, the motion is ripe for decision, and upon due consideration, it is due to be granted.

## I.   **Statement of Facts.**[2]

In the underlying action, Carolyn Byram, and her husband, A.W. Byram, sued Cajun Foods and its customer, Mark T. Reid ("Reid") for injuries sustained by Ms. Byram in an automobile accident with Reid. *State Farm's Motion for Summary Judgment*, filed February 13, 1998, at Exhibit 2. The Byrams alleged that Reid became intoxicated by alcoholic beverages served to him by Cajun Foods and that Reid subsequently drove head-on into the vehicle operated by Ms. Byram. *Id.* The Byrams claimed that Cajun Foods was liable to them as follows: (1) under Alabama's Dram Shop Act, Ala. Code § 6-5-71 (1975); *Id.* (Count 1); (2) for negligence and wantonness for its failure to "call [Reid] a taxi for his ride

---

[2] The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994), *cert. denied*, *USX Corp. v. Cox*, 114 S. Ct. 900 (1995).

home;" *Id.* (Count 2);[3] (3) as a third party beneficiary of an implicit agreement between Cajun Foods and its customers that, in exchange for their continued patronage, "under certain circumstances, [Cajun Foods] can and will detain [an intoxicated patron] and insist that a taxi be called on his behalf;" *Id.* (Count 3);[4] and (4) for loss of spousal consortium by Mr. Byram; *Id.* (Count 5).[5]

---

[3] Count 2 states as follows:

1. Cajun Foods, Inc., d/b/a Cajun's Restaurant & Lounge and/or fictitious defendants owed a duty to Mr. Reid and to persons whom Mr. Reid would foreseeably encounter on the roadway to call him a taxi for his ride home. Defendants breached said duty when they failed to call or procure a taxi.

2. Said conduct by defendants was negligent or wanton.

3. As a proximate result of defendants' said negligence or wantonness, plaintiffs were damaged as herein described.

*State Farm's Motion for Summary Judgment*, filed February 13, 1998, at Exhibit 2.

[4] Count 3 states as follows:

1. An agreement existed between the patrons of Cajun's Restaurant & Lounge and/or fictitious defendants, as follows: If in the judgment of a Cajun's Restaurant & Lounge employee an intoxicated patron is leaving the premises and getting in his car and driving on the road, under certain circumstances the employee can and will detain that patron and insist that a taxi be called on his behalf.

2. The consideration for such agreement to Cajun's Restaurant & Lounge is good will, continued patronage, and compliance with state laws and the spirit of the laws. The consideration for such agreement to the patron is his safety, his health, the health and safety of others, and compliance with state laws.

3. The intended and foreseeable third party beneficiary of the agreement is the foreseeable driver on the road who might come in contact with a dangerous intoxicated driver.

4. Plaintiff was a foreseeable and intended third party beneficiary on the date and time of the accident made the basis of this claim.

5. Defendants breached their contract with Mr. Reid, and as a result of said breach, plaintiffs were damaged as above described.

*State Farm's Motion for Summary Judgment*, filed February 13, 1998, at Exhibit 2.

[5] Counts 4 & 6 of the complaint in the underlying action state claims against Reid for negligence, wantonness, and recklessness, and against fictitious defendants, respectively. *State Farm's Motion for Summary Judgment*, filed February 13, 1998, at Exhibit 2.

3

At the time that the Byrams filed the underlying action, Cajun Foods was insured by a Business Insurance Policy issued by State Farm. *Id.* at Exhibit 1. Cajun Foods promptly notified State Farm of the underlying action, and State Farm referred the matter to a private attorney, asking that the attorney "look after the defense of the lawsuit" brought against Cajun Foods. *Id.* at Exhibit 3. However, in its letter in response to Cajun Foods' notice of the underlying lawsuit, State Farm specifically reserved the right to deny coverage under the exclusions in Cajun Food's policy. *Id.*

The exclusions in Cajun Foods' insurance policy, which State Farm recited in its letter to Cajun Foods, include the following:

. . . this insurance does not apply:

\*    \*    \*

3.  to bodily injury or property damage for which any insured may be held liable:

    (a)   as a person or organization engaged in manufacturing, distributing, selling, serving or furnishing alcoholic beverages if such liability is imposed by reason of:

        (1)   any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages; or

        (2)   the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol or which causes or contributes to the intoxication of any person;

    (b)   as an owner or lessor of premises used for manufacturing, distributing, selling, serving or furnishing alcoholic beverages if such liability is imposed by reason of any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

4

> This entire exclusion does not apply to the liability imposed on any insured as a result of the giving or serving of alcoholic beverages at functions incidental to your business, provided you are not: (a) in the business of manufacturing, distributing or selling alcoholic beverages; (b) serving or furnishing alcoholic beverages for a charge whether or not such activity requires a license or is for the purpose of financial gain or livelihood; (c) serving or furnishing alcoholic beverages without a charge if a license is required for such activity; or (d) intentionally violating any statute, ordinance or regulation.

*Id.* at Exhibit 1, p. 21.

State Farm investigated the claims against Cajun Foods in the underlying action. *Id.* at Exhibit A, ¶ 7 (Affidavit of Harry Dellinger). As a part of the investigation, State Farm obtained copies of the arrest report and the accident report from the collision between Reid and Ms. Byram. *Id.* at Exhibit A, ¶ 8. The reports indicate that Reid was arrested for assault, reckless driving, driving under the influence and driving on a revoked license, his driver's license having been revoked after a previous driving-under-the-influence arrest. *Id.* at Exhibits 4 & 5. The arresting officer testified in his report that, during questioning, Reid stated that "he had been at Cajun's Restaurant from approximately 8:30 p.m. until leaving just prior to the accident," which occurred at approximately 11:30 p.m., and Reid stated that "he consumed six beers while at the restaurant." *Id.* at Exhibit 5. As a part of its investigation, State Farm also obtained recorded statements from the owners of Cajun Foods, who indicated that Reid "left their bar around 5:00 p.m. after drinking only two beers." *Id.* at Exhibit A, ¶¶ 9, 10. Finally, State Farm interviewed officers of the Sheffield Police Department who investigated the accident and patrons at Cajun's Restaurant, "where Reid was apparently a regular customer." *Id.* at Exhibit A, ¶ 9.

5

Based upon State Farm's investigation, its claim superintendent, Harry Dellinger ("Dellinger"), decided that Cajun Foods was not covered by its Business Insurance Policy issued by State Farm because of Exclusions 3(a) and 3(b), cited above. *Id.* at Exhibit A, ¶¶ 11-13. Dellinger prepared a report recommending that State Farm deny coverage to Cajun Foods, which he submitted to State Farm's claims committee. *Id.* at Exhibit A, ¶ 14. The claims committee agreed, and on December 31, 1996, State Farm informed Cajun Foods by letter of its decision to deny coverage. *Id.* at Exhibit A, ¶ 15; *see also id.* at Exhibit 6. On January 2, 1997, State Farm directed its private attorney to withdraw from defense of the matter, which he did shortly thereafter. *Id.* at Exhibit A, ¶ 15.

Represented by new attorneys, Cajun Foods filed the present action against State Farm on April 23, 1997.[6]

## II.    Summary Judgment Standard.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party

---

[6] On February 24, 1998, after State Farm filed its pending motion for summary judgment, counsel for Cajun Foods in this action moved this court for permission to withdraw, stating as grounds for their motion as follows:

> On Friday, February 20, 1998, the parties to the underlying action executed a Settlement Agreement and General Release. Under the Terms of the Settlement Agreement and General Release, the plaintiffs assigned or otherwise transferred any rights in and to, inter alia, the claims which the plaintiffs have made in the present action to the Byrams, who were plaintiffs in the underlying action. As a part of the settlement of the underlying action, counsel for the Byrams . . . agreed to assume representation of the plaintiffs in the present action.

*Motion to Withdraw*, filed February 24, 1998, at ¶¶ 2-3.

asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movants can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Celotex*, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

7

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 745 n.11(1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movants is to be believed and

8

all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## III. Discussion.

### A. Bad Faith Claim.

Cajun Foods' claim against State Farm for bad faith failure to pay an insurance claim is due to be dismissed as a matter of law. In Alabama, "[t]he tort of bad faith is an extreme remedy that applies only in extreme circumstances concerning an unexcused failure to process a claim or to pay policy benefits." *ALFA Mut. Ins. Co. v. Northington*, 604 So. 2d 758, 760 (Ala. 1992). Proof of mere negligence or a mistake on the part of the insurer is not sufficient to support a claim for bad faith under Alabama law. *Davis v. Cotton States Mut. Ins. Co.*, 604 So. 2d 358, 359 (Ala. 1992); *King v. National Foundation Life Ins. Co.*, 541 So. 2d 502 (Ala. 1989).

Under Alabama law, the tort of bad faith requires the plaintiff to prove each of the elements of a prima facie case as follows:

(a) the existence of an insurance contract between the parties and a breach thereof by the defendant;

(b) an intentional refusal to pay the insured's claim;

(c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);

(d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;

(e) if . . . intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure

9

to determine whether there is a legitimate or arguable reason to refuse to pay the claim.

*S & W Properties, Inc. v. American Motorists Ins. Co.*, 668 So. 2d 529, 531 (Ala. 1995); *see also National Sec. Fire & Cas. Co. v. Bowen*, 417 So. 2d 179 (Ala. 1982).

The Alabama Supreme Court has repeatedly held that the plaintiff's burden in a bad faith claim is a heavy one. *Id.*; *National Sav. Life Ins. Co. v. Dutton*, 419 So. 2d 1357, 1362 (Ala. 1982). "In the normal case in order for a plaintiff to make out a prima facie case of bad faith refusal to pay an insurance claim, the proof offered must show that the plaintiff is entitled to a directed verdict on the contract claim and, thus, entitled to recover on the contract claim as a matter of law." *S & W Properties*, 668 So. 2d at 531; *Bowen*, 419 So. 2d at 1362. Finally, to defeat a bad faith claim, the insurer does not have to show that its reason for denial was correct, but only that it was arguably correct. *Liberty Nat'l Life Ins. v. Allen*, 699 So. 2d 138, 143 (Ala. 1977).

Cajun Foods has presented no evidence in its opposition to State Farm's motion for summary judgment to support its claim for bad faith. Furthermore, in its argument in response to State Farm's motion for summary judgment, Cajun Foods offers no opposition to a judgment as a matter of law on this claim. Accordingly, because no reasonable jury could find in favor of Cajun Foods on its claim for bad faith against State Farm, the claim is due to be dismissed with prejudice.

**B.      Breach of Contract Claim.**

Cajun Foods argues, in opposition to State Farm's motion for summary judgment, that its insurance contract with State Farm, notwithstanding the exclusionary language in

10

the contract, obligates State Farm to provide it with a defense and indemnification in the underlying action. *Plaintiffs' Brief in Opposition to Defendant State Farm's Motion for Summary Judgment*, submitted March 27, 1998, at 22. Cajun Foods does not argue that State Farm wrongly denied it coverage for the claims in Count 1 of the complaint in the underlying action, which states a claim under Alabama's Dram Shop Act; rather, Cajun Foods argues that "[t]he 'taxi' allegations in 'Count 2' and 'Count 3' of the complaint . . . do not in any fashion invoke the Dram Shop Act or any similar (or other) statute, ordinance or regulation. *Id.* at 19. According to Cajun Foods, the reason that State Farm can not avoid liability for Counts 2 and 3 of the complaint is that the allegation in Count 1, stating "Reid was sold, given or otherwise furnished alcoholic beverages contrary to law," are not "magically 'incorporated' into Counts 2 through 6 of the Byram lawsuit complaint." *Id.* at 5-6.

However, Cajun Foods has failed to create a factual question as to whether the allegations in Counts 2 and 3 of the complaint in the underlying action arise from the same sequence of events as do the allegations in Count 1 of that complaint. All the claims against Cajun Foods, in the underlying action, arise from the undisputed fact that Cajun Foods served alcohol to Reid, its customer, and then allowed Reid to drive away. Also undisputed is the fact that Cajun Foods insurance policy excludes coverage for:

> . . . bodily injury or property damage for which any insured may be held liable . . . as a person or organization engaged in . . . selling, serving or furnishing alcoholic beverages if such liability is imposed by reason of . . . furnishing alcoholic beverages to a person . . . under the influence of alcohol or which causes or contributes to the intoxication of any person.

11

*State Farm's Motion for Summary Judgment*, filed February 13, 1998, at Exhibit 1, p. 21. Therefore, Cajun Foods' insurance contract with State Farm clearly excludes coverage for the sequence of events that gave rise to the underlying action.

Summary judgment is appropriate in a breach of contract action where the contract is unambiguous and the facts are undisputed. *See P&S Business, Inc. v. South Central Bell Tele. Co.*, 466 So. 2d 928 (Ala. 1985). Any consideration of the coverage afforded by an insurance policy begins with the language of the policy itself and the court will enforce an insurance policy as written, as long as the language of the policy is clear and unambiguous. *See Nationwide Mut. Ins. Co. v. Hall*, 643 So. 2d 551 (Ala. 1994); *Chamblee v. State Farm Mut. Auto Ins. Co.*, 601 So. 2d 922 (Ala. 1992); *Wakefield v. State Farm Mut. Auto Ins. Co.*, 572 So. 2d 1220 (Ala. 1990); Colonial *Life & Accident Ins. Co. v. Collins*, 194 So. 2d 532 (Ala. 1967). The Eleventh Circuit has recognized that, in Alabama, "'[a]mbiguities will not be inserted, by strained or twisted reasoning, into contracts where no such ambiguities exist.'" *Smith v. Horace Mann Ins. Co.*, 713 F. 2d 674, 676 (11th Cir. 1983) (quoting *Billups v. Alabama Farm Bureau Mut. Cas. Ins. Co.*, 352 So. 2d 1097, 1102 (Ala. 1977). Furthermore, in Alabama, "[a]bsent public policy considerations that dictate a contrary result, courts will not, in order to create a new contract for the parties, ignore express provisions of a policy, including exclusionary clauses or terms limiting the insurance company's liability." *Gardner v. Cumis Ins. Soc., Inc.*, 582 So. 2d 1094, 1095-96 (Ala. 1991); *see also Altiere v. Blue Cross & Blue Shield of Ala.*, 551 So. 2d 290, 292 (Ala. 1989) (citing *Turner v. United States Fidelity & Guaranty Co.*, 440 So. 2d 1026 (Ala. 1983). Finally, in Alabama, "insurance companies are entitled to have their policy contracts

enforced as written . . . ." *Gregory v. Western World Ins. Co.*, 481 So. 2d 878, 881 (Ala. 1985); *see also Taber v. Nationwide Mut. Ins. Co.*, 447 So. 2d 698, 700 (Ala. 1984).

In this case, applying the plain meaning of the exclusionary language in the insurance contract, and construing all the evidence in a light most favorable to Cajun Foods, no reasonable jury could find that the insurance contract between Cajun Foods and State Farm does not exclude coverage for the claims in the underlying lawsuit. Therefore, the motion for summary judgment on the breach of contract claim is due to be granted, and that claim is due to be dismissed with prejudice.

### C. **Prayer for Declaratory Relief.**

Under the foregoing analysis in the preceding section of this opinion, Cajun Foods' prayer for declaratory relief is due to be denied, as a matter of law.

### IV. **Conclusion.**

Accordingly, in an order to be entered contemporaneously with this opinion, State Farm's motion for summary judgment will be granted and this action will be dismissed with prejudice.

Done, this **29th** of April, 1998.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE

13